IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02792-NYW

MIGUEL LUCIANO,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.
_____

# OPINION AND ORDER
_____

Magistrate Judge Nina Y. Wang

This matter comes before the court on the United States of America's ("United States" or "Defendant") Motion for Summary Judgment. [#57, filed May 10, 2017]. The Motion is before the court pursuant to the Order of Reference dated March 8, 2016 [#24], 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. This court has carefully considered the Motion, the entire case file, and the applicable case law and, for the following reasons, ORDERS that the Motion is GRANTED.

## BACKGROUND

Plaintiff Miguel Luciano is in the custody of the Federal Bureau of Prisons ("BOP") and initiated this civil action on June 29, 2015 by filing a *pro se* prisoner complaint in the United States District Court for the Middle District of Pennsylvania, asserting claims pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671, *et seq.*, arising from allegations of medical malpractice and negligence related to dental care he received while housed at a federal prison in Colorado. [#1-1]. The Middle District of Pennsylvania granted

Plaintiff's motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, *see* [#1-6], prior to granting Defendant's motion to transfer venue and transferring the action to this District. [#1, #1-28]. Section 1915 and the Local Rules of this District require a court to evaluate a prisoner complaint and dismiss *sua sponte* an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); D.C.COLO.LCivR 8.1(b). On January 4, 2016, the court directed Plaintiff to re-file the Complaint on the court-approved Prisoner Complaint form. [#5]. Plaintiff submitted the Amended Complaint in compliance with the court's order.

The Amended Complaint is verified and avers as follows. On February 11, 2014, at the federal penitentiary in Florence, Colorado, Plaintiff underwent a tooth extraction and subsequently developed an infection. [#12 at 3]. Dr. Nixon Roberts, the BOP dentist responsible for the extraction, unsuccessfully treated Plaintiff with ibuprofen for pain.[1] On February 24, 2014, Plaintiff underwent an emergency operation with Dr. Robert McLean, at an outside hospital, to address the infection. [*Id.* at 4]. After Plaintiff returned to the prison, Dr. Roberts told him that his "diabetic issue was the cause of the infection as such only occurs in one in a million cases." [*Id.*]. Plaintiff alleges that Dr. McLean's instructions regarding Plaintiff's recovery included removing the "Nu-Gauze" from Plaintiff's mouth no later than February 29, 2014. No one removed the "Nu-Gauze," and, during a March 11, 2014 check-up, Dr. McLean observed that Plaintiff's mouth was healing over the "Nu-Gauze," requiring that he perform a second operation on Plaintiff. [*Id.*]

On October 3, 2014, Mr. Luciano filed an administrative claim arising from these

---

[1] In both the Amended Complaint and Defendant's subsequent motion to dismiss, the Parties refer to this dentist as Dr. Nixon. *See generally* [#12; #28]. In the Motion for Summary

allegations of negligence. [#12 at 4]. The United States failed to respond to the administrative claim. [*Id.*] Plaintiff initiated this civil action on June 29, 2015, and now seeks $25,000.00 in monetary damages for the alleged negligence of Dr. Roberts and his employees. [*Id.* at 7]. Plaintiff identified three different alleged acts of negligence by Dr. Roberts: (1) failure to check his medical issues, specifically diabetes, prior to removing his tooth on February 11, 2014; (2) failure to provide medical attention prior to February 24, 2014, once swelling and infection had been visible for ten days; and (3) failure to follow the post-operative directions of Dr. McLean, the outside physician, which necessitated the second emergency operation. [#12 at 5].

On April 5, 2016, the court held a Status Conference at which the undersigned led discussion regarding Mr. Luciano's plan to obtain and file a certificate of review, and granted Defendant's oral motion for an extension of time to respond to the Amended Complaint. *See* [#27]. On April 15, 2016, the United States filed a motion to dismiss on the singular basis that Plaintiff had failed to file a certificate of review. *See* [#28]. Plaintiff subsequently filed three motions for extension of time to file a certificate of review, [#31, #34, #36], which the court granted, [#32, #35, #37], permitting Plaintiff to file a certificate of review on or before July 18, 2016. Plaintiff also filed a Response to the Motion to Dismiss, arguing that a certificate of review is not jurisdictional and that the court may in its discretion determine that a certificate of review is not necessary to proceed under the FTCA. [#33]. The United States did not file a reply.

On August 1, 2016, the court granted the motion to dismiss in part and denied it in part. *See* [#39]. Specifically, the court granted the motion as to the claim for negligence arising from the allegations regarding Dr. Roberts's extraction and treatment of the infection, finding that

---

Judgment, Defendant identifies him as Dr. Nixon Roberts, *see generally* [#57], which appears to

those allegations "form precisely the type of claim that requires expert testimony, and therefore, a certificate of review." [*Id.* at 10]. The court denied the motion as to the claim that Dr. Roberts was negligent in failing to remove the Nu-Gauze within the 4-day time period as directed by Dr. McLean, finding that the circumstances presented by Mr. Luciano are analogous to the circumstances in which a foreign body was left in a patient after surgery, and where courts did not require a certificate of review. [*Id.*] The court observed that even if the remaining claim ultimately required evidence from a physician, Mr. Luciano "may be able to solicit that evidence through the examination of Dr. Roberts or Dr. McLean," and that "[t]he issue of the application of *res ipsa loquitur* or the ability of Mr. Luciano to carry his burden" would be more appropriately addressed at a later stage and after the opportunity to take discovery. [*Id.* at 13]. Accordingly, the Parties entered discovery with one claim for negligence pending, i.e., whether Dr. Roberts or his staff was negligent in not removing the Nu-Gauze within four days of the first surgery, as instructed by Dr. McLean.

On August 15, 2016, the United States filed its Answer. [#41]. On September 29, 2016, the undersigned presided over a Status Conference at which she set certain pretrial dates and the following deadlines: designate principal experts on or before January 27, 2017 and rebuttal experts on or before February 27, 2017; complete discovery by March 31, 2017; and file dispositive motions by May 1, 2017. *See* [#47]. The court thereafter granted Defendant's motion for extension of time to file dispositive motions, *see* [#55; #56], and the United States filed the pending Motion for Summary Judgment on May 10, 2017. [#57]. The court instructed Plaintiff to file a response on or before June 9, 2017. *See* [#58]. The United States thereafter moved to vacate the July 11, 2017 Final Pretrial Conference, [#59], which the court granted,

---

be the correct name, *see generally* [#57-2], and the name the court uses herein.

[#60]. To date, Plaintiff has not filed a certificate of review or a response to the Motion for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

In reviewing a motion for summary judgment the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002). However, the nonmovant must establish, at a minimum, an inference of

the presence of each element essential to the case. *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994) (citation omitted). When, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998) (citation omitted). Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). *See also Anderson*, 477 U.S. at 256 (The nonmovant "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.").

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a *pro se* litigant, including … summary judgment proceedings." *Id.* at n. 3 (citations omitted). However, the court cannot be a *pro se* litigant's advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008). "Although [o]ur summary judgment standard requires us to view the facts in the light most favorable to the non-moving party[,] it does not require us to make unreasonable inferences in favor of the non-moving party." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Starr v. Downs,* 117 Fed. App'x. 64, 69 (10th Cir. 2004)). Because Mr. Luciano failed to file a Response to the Motion for Summary Judgment, the court deems the properly supported facts offered by the United States as true. *See* Fed. R. Civ. P. 56(e)(2); *Lammle v. Ball Aerospace & Techs. Corp.*, Case No. 11-cv-3248-MSK-MJW, 2013 WL 4718928, *1 (D. Colo. Sept. 1, 2013). In doing so,

however, the court has reviewed the entirety of the exhibits submitted by Defendant to ascertain the context of that evidence. Despite Mr. Luciano's lack of response, the court may not enter summary judgment unless the United States carries its burden under Rule 56 of the Federal Rules of Civil Procedure. *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

## STATEMENT OF UNDISPUTED FACTS

The following facts are taken from the Motion for Summary Judgment and are supported by the record. Plaintiff's claims arose in the State of Colorado. [#12 at 3]. On February 11, 2014, Dr. Roberts extracted a tooth from the left side of Plaintiff's mouth. [#12 at 3]. On February 24, 2014, following complications from the extraction, Plaintiff was escorted to St. Mary Corwin Hospital where Dr. McLean operated on an infected abscess that had developed in Plaintiff's mouth. [#12 at 4, 20-21; #57-2 at ¶ 13]. Dr. McLean packed the wound with Nu-Gauze. [*Id.* at 21]. Dr. McLean is employed by St. Mary Corwin Hospital; he is a contractor and not an employee of the United States. [#57-3 at ¶¶ 11, 13, 14]. Dr. Roberts was not present during the February 24, 2014 surgery that Dr. McLean performed on Plaintiff. [#57-2 at ¶¶ 11, 12]; *see* [#57-3 at ¶ 9]. The Nu-Gauze was not timely removed. On March 11, 2014, Plaintiff returned to St. Mary Corwin Hospital for a check-up, at which time Dr. McLean observed the Nu-Gauze was still packed in the wound and that Plaintiff's "mouth was healing over the Nu-Gauze." [#12 at 4]. Dr. McLean subsequently ordered a second surgery for the purpose of removing the Nu-Gauze. [#12 at 4, 33].

## ANALYSIS

Although the United States is generally entitled to sovereign immunity from suit, the FTCA grants subject matter jurisdiction to federal courts over claims against the United States seeking money damages for personal injury caused by the negligence of federal employees while

7

acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). *See Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1463 (10th Cir. 1989). A plaintiff who sues under the FTCA must comply with the statute's notice requirements, which are jurisdictional, cannot be waived, and must be strictly construed. *Trentadue v. United States,* 397 F.3d 840, 852 (10th Cir. 2005) (citation omitted). "The jurisdictional statute, 28 U.S.C. § 2675(a), requires that claims for damages against the government [first] be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Id.* (citations omitted). The purpose of the notice requirement is to "'allow the agency to expedite the claims procedure and avoid unnecessary litigation by providing a relatively informal nonjudicial resolution of the claim.'" *Id.* (quoting *Mellor v. United States,* 484 F.Supp. 641, 642 (D. Utah 1978)). "The FTCA provides that the United States shall be liable under state tort law only 'in the same manner and to the same extent as a private individual under like circumstances.'" *Hill v. SmithKline Beecham, Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004) (quoting *Nationwide Mut. Ins. Co. v. United States,* 3 F.3d 1392, 1396 (10th Cir. 1993)). Thus, the Tenth Circuit has held that Colorado law applies to suits brought against the United States under the FTCA. *Hill*, 393 F.3d at 1117-18 ("State substantive law applies to suits brought against the United States under the FTCA").

The United States argues that it is entitled to summary judgment as a matter of law because Plaintiff cannot prove his medical negligence claim under a theory of *res ipsa loquitur*, and, because the claim requires that Plaintiff present expert testimony, his failure to obtain a certificate of review and designate an expert witness renders him unable to prove the claim. I agree that the doctrine of *res ipsa loquitur* is not applicable here, that expert testimony is

necessary to establish both the applicable standard of care and breach, and that, in response to the arguments raised and evidence cited by Defendant, Plaintiff has not carried his burden of demonstrating that a triable issue of fact exists.

**I.      Applicable Law**

   **A.  Negligence**

"A cause of action in tort arises out of a violation of a legal duty imposed upon an actor to avoid causing harm to others." *United Blood Servs. v. Quintana*, 827 P.2d 509, 519 (Colo. 1992). The elements of a negligence claim include the existence of a legal duty owed by the defendant, a breach of that duty, causation, and damages. *Id.* The question of legal duty is a question of law. *Quintana*, 827 P.2d at 519. "The court determines, as a matter of law, the existence and scope of the duty—that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection." *Metropolitan Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313, 317 (Colo. 1980). "[A] general claim for negligence in medical treatment arises when a physician's care falls below the degree of knowledge, skill, and care used by other physicians practicing the same specialty." *Gorab v. Zook*, 943 P.2d 423, 427 (Colo. 1997) (citation omitted).

"In Colorado a finding of negligence does not create liability on the part of a defendant unless that negligence is a proximate cause of the plaintiff's injury." *City of Aurora v. Loveless,* 639 P.2d 1061, 1063 (Colo. 1981). "Proximate cause has two aspects: causation in fact and legal causation." *Reigel v. SavaSeniorCare L.L.C.,* 292 P.3d 977, 985 (Colo. App. 2011). Only causation at fact is at issue here. To establish causation in fact, "a plaintiff must show either that (1) but for the defendant's alleged negligence, the claimed injury would not have occurred, or (2) the defendant's alleged negligence was a necessary component of a causal set

9

that would have caused the injury." *Id.* (citation omitted). The "but-for" test is "satisfied if the negligent conduct in a natural and continued sequence, unbroken by any efficient, intervening cause, produce[d] the result complained of, and without which the result would not have occurred." *Id.* (internal quotation marks and citation omitted). The second test is used where causes other than the defendant's negligence "may be at play," *id.* at 987, and may be met if the plaintiff can show that the defendant's negligence was a "substantial contributing cause" or a "substantial factor" in causing the damages. *Vititoe v. Rocky Mountain Pavement Maintenance, Inc.*, --- P.3d ----, 2015 WL 3777138, at *6 (Colo. App. 2015) (quoting *Rupert v. Clayton Brokerage Co.,* 737 P.2d 1106, 1112 (Colo. 1987)).

Colorado statutory law requires plaintiffs to file a certificate of review to pursue claims alleging professional negligence by a licensed professional:

> In every action for damages or indemnity based upon the alleged professional negligence of…a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each…licensed professional named as a party, as specified in subsection (3) of this section, within sixty days after the service of the complaint…against such person unless the court determines that a longer period is necessary for good cause shown.

Colo. Rev. Stat. § 13-20-602(1)(a).

## B. *Res Ipsa Loquitur*

"*Res ipsa loquitur* is a common-law evidentiary rule that creates a rebuttable presumption that the defendant was negligent." *Chapman v. Harner*, 339 P.3d 519, 521 (Colo. 2014) (citing *Kendrick v. Pippin,* 252 P.3d 1052, 1061 (Colo. 2011), *abrogated on other grounds by Bedor v. Johnson,* 292 P.3d 924 (Colo. 2013). The doctrine of *res ipsa loquitur* applies "when it is judicially determined that a particular unexplained occurrence creates a prima facie case of negligence without proof of specific misconduct." *Williams v. Boyle*, 72 P.3d 392, 397-98 (Colo. App. 2003). "The doctrine applies where the cause of injury is so apparent that a lay person is as

able as an expert to conclude that such things do not happen in the absence of negligence." *Id.* *See also Shinn v. Melberg*, No. 12–cv–01180–LTB–BNB, 2014 WL 334662, at *4-5 (D. Colo. Jan. 30, 2014) (comparing cases). To trigger the court's imposition of the doctrine, a plaintiff must "present evidence that the event is the kind which ordinarily does not occur in the absence of negligence; responsible causes other than the defendant's negligence are sufficiently eliminated by the evidence; and the presumed negligence is within the scope of the defendant's duty to the plaintiff." *Williams*, 72 P.3d at 397-98. *See Chapman*, 339 P.3d at 521. If the court finds that *res ipsa loquitur* is applicable, the proof of the circumstances necessary for application of the doctrine "takes the place of evidence of specific negligence." *Kitto v. Gilbert,* 570 P.2d 544, 548 (Colo. App. 1977).

The burden of proof remains on the plaintiff throughout a case involving *res ipsa loquitur*. *Chapman*, 339 P.3d at 520, 526 ("satisfying res ipsa loquitur's elements creates a rebuttable presumption that 'imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but ... the burden of proof in the sense of the risk of non-persuasion ... remains throughout the trial upon the' plaintiff.") (citing Colorado Rule of Evidence 301). Whether the doctrine of *res ipsa loquitur* is applicable in the first instance is a question of law for the trial court. *Shinn*, 2014 WL 334662, at *4 (citing *Holmes v. Gamble,* 624 P.2d 905 (Colo. App. 1980)).

## II. Application

As stated above, the negligence claim herein at issue is Dr. Roberts's alleged failure to follow, or order his subordinates to follow, Dr. McLean's post-surgical directives, which resulted in the second emergency surgery on March 11, 2014. *See generally* [#12]. Thus, the alleged negligence at issue emanates from the actions of Dr. Roberts and/or his subordinates within the

11

context of the duty they owed Plaintiff in the medical care they provided following the February 24, 2014 surgery.

Notwithstanding Defendant's characterization of certain facts as undisputed and Plaintiff's failure to respond to the Motion for Summary Judgment, the court finds that the following, notable facts are in dispute. Dr. Roberts attests in his declaration that on February 25, 2014, Dr. McLean prepared and sent a discharge note to BOP Health Services when Plaintiff was discharged from St. Mary Corwin Hospital. [#57-2 at ¶ 14]. Dr. Roberts attests that "[t]he discharge note recommended prescribing [Plaintiff] antibiotics for ten days and considering giving him anti-emetic thirty minutes prior to antibiotics, if Plaintiff continued to have nausea and throw up," and that "Plaintiff should follow-up as needed," but that "[t]here were no instructions related to the monitoring and/or removal of Nu-Gauze by BOP Dental contained in the discharge note prepared by consulting physician, Dr. McLean." [*Id.*; #57-6 at 67-71]. The discharge note, which is attached to the Motion for Summary Judgment, indeed appears to omit any mention of the Nu-Gauze other than to note, "[p]acking in place." [#57-6 at 69]. However, Plaintiff alleges in his Verified Amended Complaint: "[a]fter returning from the outside hospital on 2/24/14 there were prescriptive orders from the surgeon (Dr. Robert McLean) that: In four (4) days Dr. Nixon was to remove the Nu-Gauze from Mr. Luciano mouth…," [sic], [#12 at 4]. In an Operative Report dated March 11, 2014, after the second operation at St. Mary Corwin Hospital during which the Nu-Gauze was removed from Plaintiff's mouth, Dr. McLean wrote:

> Patient status post incision and drainage of a odontogenic abscess on 02/24/2014. I packed the wound with some quarter-inch Nu-Gauze. Patient went back to the facility. I had asked them to remove the packing material in 4 days. The patient presented today with continued cheek swelling inability to open mouth widely. He states that he told the facility people to remove the packing and the patient attests that they told him that they had. The patient stated that the they told him, "that they had taking care of it." [sic] I saw the patient in the clinic. There was some packing material in the upper gingival buccal sulcus posteriorly on the left. There

> was induration in the buccal mucosa as well. I tried to remove it in the clinic, but was not able to. The patient was n.p.o. so I simply called the operating room, and asked to add him to the schedule.

("Operative Report") [#12 at 33; #57-6 at 65].[2] *See* Fed. R. Civ. P. 56(c)(3) (providing that the court may consider materials in the record that are not cited in conjunction with a motion for summary judgment).

While these genuinely disputed facts give the court pause, I ultimately find that they are not material to determining whether *res ipsa loquitur* applies here. As stated above, the application of *res ipsa loquitur* is a matter of law, and Plaintiff maintains the burden of proof to demonstrate that he is entitled to the rebuttable presumption of negligence that application of *res ipsa loquitur* affords. *Chapman*, 339 P.3d at 525. I find that Plaintiff has failed to carry his burden with respect to the second element of the inquiry, which is whether causes other than the defendant's negligence that might be responsible for Plaintiff's harm are eliminated sufficiently by the evidence.

Dr. McLean does not identify in the Operative Report to whom he delivered the instructions regarding the Nu-Gauze or of whom at the facility Plaintiff asked to remove the Nu-Gauze. Nor does Plaintiff allege in his Verified Amended Complaint that he asked Dr. Roberts or a subordinate of Dr. Roberts's to remove the Nu-Gauze. Rather, he refers to "prescriptive orders" from Dr. McLean. [#12 at 4]. However, the discharge note does not contain any orders regarding removal of the Nu-Gauze . *See* [#57-6 at 69]. It is of course possible that Dr. McLean issued multiple discharge notes, or memorialized the instructions on a different form, but such evidence is not found in the record. Viewing the disputed facts in a light most favorable to Plaintiff, the court is left to speculate as to which individuals received the instruction regarding

the Nu-Gauze removal. Those individuals might not have been subordinates of Dr. Roberts, or even medical personnel, but rather members of Plaintiff's security escort.[3] Perhaps if the actors and actions were limited to Dr. Roberts and Dr. McLean, the dispute of fact regarding whether Dr. Roberts received the Nu-Gauze instructions would be material. However, the record, presented after the close of discovery, does not eliminate other, unnamed individuals as parties bearing responsibility for the alleged negligence. *See Freedman v. Kaiser Foundation Health Plan of Colorado*, 849 P.2d 811, 817 (Colo. App. 1992) (affirming trial court's decision not to give *res ipsa loquitur* instruction in relevant part because "plaintiffs failed to eliminate sufficiently causes other than the alleged negligence of the individual physicians"). In viewing the record as a whole, I cannot conclude that it was more likely that the second surgery was caused by the negligence of Dr. Roberts and/or his staff than that it was not. *See Shelton v. Penrose/St. Francis Healthcare System*, 984 P.2d 623, 627 (Colo. 1999); *Holmes v. Gamble*, 655 P.2d 405, 408 (Colo. 1982). Thus I do not find that application of *res ipsa loquitur* at this juncture is proper.

Additionally, although in its previous Order the court left open the possibility that Plaintiff could establish the first and second elements of breach without the use of expert testimony, Mr. Luciano has failed to carry his burden on summary judgment that he can

---

[2] The court notes that Federal Rules of Evidence recognize an exception to hearsay for a statement made for medical diagnosis or treatment. *See* Fed. R. Evid. 803(4).

[3] To extend the United States' potential liability further, i.e., to other federal actors, would act in contravention of the FTCA's notice requirements. *See Trentadue,* 397 F.3d at 853 (holding that although a plaintiff's administrative claim "need not elaborate all possible causes of action or theories of liability," it must provide notice of the "facts and circumstances" underlying the plaintiff's claims). *See also Bethel v. United States, ex rel. Veterans Admin. Medical Center of Denver, Colorado*, 495 F.Supp.2d 1121, 1122 (D. Colo. 2007) (denying motion to amend where plaintiffs sought to amend their complaint to add a claim against the government for negligent credentialing and privileging but original claim was for medical negligence against one of the

14

establish, without the testimony of an expert, that Dr. Roberts's failure to remove Nu-Gauze from Plaintiff's mouth within the prescribed four-day period is a breach of the duty of medical care that Dr. Roberts and his staff owed Plaintiff. *See Greenwell v. Gill*, 660 P.2d 1305, 1307 (Colo. App. 1982) (recognizing several exceptions under Colorado law "to the principle that expert testimony is necessary to establish claims of medical malpractice," explaining that a plaintiff who alleges negligent treatment is not required to introduce expert witness testimony if the factual context of the proceeding is not so complex as to require expert testimony to establish the applicable professional standards and minimal levels of competence); *Shelton*, 984 P.2d at 627 ("some claims of professional negligence do not require expert testimony," and "[i]f the reasons proffered by the plaintiff for not filing a certificate of review have arguable merit, the trial court acts within its discretion when it does not require a certificate"; however, "[i]t is only in unusual circumstances that a medical malpractice claim can be proven without the presentation of expert medical opinion to establish the proper standard of care against which the professional's conduct is to be measured"). *See also Gorab*, 943 P.2d at 427 n.5 ("[E]xpert testimony in medical malpractice actions is necessary to determine the standards of professional care and competence which define the concept of reasonableness appropriate to adjudication of such disputes."); *Gallardo v. United States*, 752 F.3d 865, 871 (10th Cir. 2014) ("To establish a breach of the duty of care in a medical malpractice action, the plaintiff must show that the defendant failed to conform to the standard of care ordinarily possessed and exercised by members of the same school of medicine practiced by the defendant.") (internal quotations and citations omitted). Indeed, the United States argues expert testimony regarding the removal of Nu-Gauze is necessary for the following reasons: "[t]he insertion and removal of Nu-Gauze is

---

treating anesthesiologists, finding the administrative claim provided insufficient notice to the

15

ordinarily performed by trained medical professionals because it involves specific procedures"; "the Nu-Gauze is typically removed by the surgeon who packed it because he is aware of the quantity of the dressing and placement location"; and "expert testimony is required to understand the effects and potential consequences of leaving Nu-Gauze in a wound and of delayed removal." [#57 at 9-10; #57-2 at ¶¶ 22, 23]. Plaintiff did not respond to the Motion for Summary Judgment, and thus he does not argue or articulate the testimony he would seek to elicit and for what purpose or how cross-examination of the United States' witnesses would elicit the evidence he requires to establish negligence, and the court cannot make these arguments on his behalf. On this basis, this court further concludes that *res ipsa loquitur* is not applicable. *See Esposito v. United States*, 165 F. App'x 671, 676 (10th Cir. 2006) (applying almost identical Kansas law on *res ipsa loquitur* and holding that the doctrine was unavailable where expert testimony was necessary to prove plaintiff's case).

Finally, the application of *res ipsa loquitur* aside, I find that Plaintiff has not marshaled the necessary evidence for the court to submit his negligence claim to a jury. The United States does not contest that Dr. Roberts owed some duty to Plaintiff or that damages resulted from the alleged negligence, and the record contains several disputes of fact that are likely material to the element of causation. *See Reigel*, 292 P.3d at 985 (observing causation is a question of fact for the jury unless the facts are undisputed and reasonable minds could draw but one inference). However, as noted above, Plaintiff has not submitted the expert testimony necessary to establish the precise parameter of the duty owed or that Dr. Roberts and/or his staff breached their duty and, as Defendant underscores, he has not submitted a certificate of review. *See Shelton*, 984 P.2d at 628 (holding it was improper for the trial court to accept expert reports in place of a

---

government with respect to negligent credentialing claim).

certificate of review). Accordingly, I find the United States is entitled to summary judgment on Plaintiff's remaining negligence claim.

## CONCLUSION

Accordingly, for the forgoing reasons, **IT IS ORDERED**:

(1) United States of America's Motion for Summary Judgment [#57] is **GRANTED**;

(2) The Clerk of the Court shall enter judgment in favor of the United States of America and against Plaintiff;

(3) Each Party shall bear his and its own fees and costs; and

(4) The Clerk of the Court shall mail a copy of this Order to the following:

CASE MANAGER FOR
MIGUEL LUCIANO #74318-053
FAIRTON
FEDERAL CORRECTIONAL INSTITUTION
PO BOX 420
FAIRTON, NJ 08320

DATED: December 29, 2017                BY THE COURT:


                                        s/ Nina Y. Wang
                                        United States Magistrate Judge